IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| FLNG LIQUEFACTION, LLC; | § | |
| FLNG LIQUEFACTION 2, LLC; and | § | |
| FLNG LIQUEFACTION 3, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 3:24-cv-00209 |
| | § | |
| ZACHRY INDUSTRIAL, INC.; | § | |
| ZACHRY INDUSTRIES, INC.; JVIC | § | |
| DEMERGER FABRICATION, INC.; | § | |
| ZACHRY ENTERPRISE SOLUTIONS | § | |
| DEMERGER, INC.; CB&I LLC n/k/a; | § | |
| MCDERMOTT INTERNATIONAL | § | |
| LTD.; CHIYODA INTERNATIONAL | § | |
| CORPORATION; and PSRG, INC., | § | |
| | § | |
| Defendants. | § | |

## CB&I LLC'S RULE 12(B)(6) MOTION TO DISMISS

CB&I LLC ("CB&I") files this 12(b)(6) Motion to Dismiss this action brought by

FLNG LIQUEFACTION, LLC ("FLNG"), FLNG LIQUEFACTION 2, LLC ("FLNG 2")

and FLNG LIQUEFACTION 3, LLC ("FLNG 3," and together with FLNG and FLNG 2,

"FLNG"), and states as follows:

### I.    INTRODUCTION

FLNG operates a liquidated natural gas facility known as the Quintana Island

LNG Liquefaction and Export Terminal (the "Plant") that it paid Defendants

approximately $3.8 billion to build.  The work was performed pursuant to a 700-page

engineering, procurement, and construction contract ("EPC Contract") in which the

parties (sophisticated entities represented by sophisticated counsel) comprehensively allocated risks and agreed to waive or limit various claims and damages.  In June 2022, two years after Defendants finished their work and FLNG began operations, an explosion occurred at the Plant following operator errors by FLNG personnel and the failure of FLNG management to mitigate the hazard despite receiving an eye-witness report of the affected pipe shaking abnormally and dangerously.

FLNG now blames CB&I for the explosion and alleges a cause of action for negligence.  This is gamesmanship, trying to avoid the EPC Contract through artful pleading.  But Texas law forbids it.  The well-established economic loss rule in Texas bars FLNG's negligence claim unless it shows an independent injury *and* an independent source of duty that CB&I allegedly owed to FLNG outside of the EPC Contract.  FLNG does not—and cannot—allege plausible facts to demonstrate either proposition and the negligence claim should be dismissed.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

CB&I provides engineering and construction services for various energy, chemical, and energy transition projects.  (*See* ECF No. 1-2, Plf.'s Orig. Pet. ("Pet.") ¶ 28.)  FLNG is the owner and operator of the Plant, which has three LNG (liquefied natural gas) storage production plants referred to as Train 1, Train 2, and Train 3.  (Pet. ¶ 20.)

FLNG contracted with Defendants CB&I, Zachry,[1] and Chiyoda, through a joint venture arrangement ("JV"), to provide engineering, procurement, and construction services for the Plant.[2]  The JV performed the instrumentation work, and the JV, FLNG, and third-party consultant, PSRG collectively validated and tested the design of the systems prior to the incident.  (*See* Pet. ¶ 28.)

The parties negotiated an extensive EPC Contract (in fact, two contracts covering the three separate Trains) to govern their relationship.   (*See* Ex. A, Train 3 EPC Contract.)[3]  In addition to identifying their rights and responsibilities during construction, the parties specifically agreed on an allocation of risk, placing a limitation on the maximum liability of the JV (*id.* ¶ 20.1) and agreeing that neither party can recover consequential damages or lost profits.[4]  (*Id.* ¶ 20.5.)

Train 1 became operational and began exporting LNG in 2019, while Train 2 and 3 began operations in 2020. (Pet. ¶ 20.)

Over two years later, on June 8, 2022, an explosion occurred that damaged the Plant but thankfully injured no one.  (Pet. ¶ 23.)  The explosion was caused by operator error.   The Incident allegedly caused the Plant to be shut down and incur business interruption and lost profit damages.  (*Id.*)

---

[1] The Zachry Defendants include Zachry Industrial, Inc., Zachry Industries, Inc., JVIC Demerger Fabrication, Inc., and Zachry Enterprise Solutions Demerger, Inc.  Zachry declared bankruptcy on May 21, 2024.

[2] PSRG is also a named Defendant. PSRG is not a part of the JV nor a party to the EPC Contract.  PSRG facilitated HAZOP studies of the FLNG systems prior to the Incident.  (Pet. ¶ 31).

[3] The contracts for Trains 1 and 2 are very similar.  The Train 3 EPC Contract is included here because the Incident occurred at or near Train 3.  The EPC Contract is provided without the voluminous attachments.

[4] The EPC Contract specifically prohibits either party from recovering, *inter alia*, lost profit and business interruption damages.  (*Id.*)

Despite the Incident occurring as a result of operator error, FLNG, on behalf of its insurers, filed this lawsuit seeking over $1.3 billion in compensation for physical damage, extra expense, and business interruption. FLNG claimed exclusively in negligence in a transparent effort to avoid the contractually-agreed-to damage limitations. (ECF No. 1-2.) This case was subsequently removed to this Court on July 5, 2024 based on Zachry's bankruptcy. (ECF No. 1.)

### III.   <u>LEGAL STANDARD</u>

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation[.]" *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555.

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is

entitled to relief.'" *Id.* (quoting Fed. R. Civ. Pro. 8(a)(2)).   Moreover, "courts are required to dismiss, pursuant to [Rule 12(b)(6)], claims based on invalid legal theories, even though they may be otherwise well-pleaded." *Flynn v. State Farm Fire & Cas. Ins. Co. (Tex.)*, 605 F. Supp. 2d 811, 820 (W.D. Tex. 2009) (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint," but can also include items subject to judicial notice and matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).   A court may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[.]" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).   Accordingly, the EPC Contract may properly be considered by the Court in reviewing the Motion. *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1083 (D. Colo. 2018) (when plaintiffs artfully pled negligence claim without alleging the existence of a contract, court considered contract attached to 12(b)(6) motion to dismiss premised on the economic loss rule because contractual documents that might govern the relationship were central to plaintiffs' negligence claim).

## IV.   ARGUMENT AND AUTHORITIES

### A. The Economic Loss Rule Bars Plaintiffs' Negligence Claim.

The economic loss rule precludes a negligence claim as a matter of law due to the existence and applicability of the EPC Contract to this action.  Texas has long established that the "[r]isks of economic loss tend to be especially well suited to allocation by contract." *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 240 (Tex. 2014) ("A contract that settles responsibility for such a risk will therefore be preferable in most cases to a judicial assignment of liability after harm is done." (quotation omitted)). Under Texas law, "if a tort claim arises solely from the parties' contractual relationship, the tort claim is not allowed." *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 583 (N.D. Tex. 2013) (explaining that the economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract").[5]

Indeed, "Texas law disfavors contorting breach of contract claims into tort claims." *Bernal v. The Bank of New York Mellon*, No. 4:14-cv-03436, 2015 U.S. Dist. LEXIS 163810, at *7-8 (S.D. Tex. Dec. 7, 2015) (citation omitted); *see LAN/STV*, 435 S.W.3d at 243 (recognizing that Texas Courts of Appeal have uniformly denied recovery of purely economic losses for negligent performance of contract).  "A plaintiff cannot circumvent this rule by simply alleging that the defendant negligently performed his

---

[5] Claims for negligence, negligence-related claims, and fraud may all be subsumed under the economic loss rule. *See Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 930 (N.D. Tex. 2014) (negligence and negligent misrepresentation); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (negligence and negligence-related claims); *Barazoukas v. Found. Design, Ltd.*, 363 S.W.3d 829, 843-44 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (negligence).

contract duties." *AXA Art Ams. Corp. v. Public Storage*, 208 F. Supp. 3d 820, 827 (S.D. Tex. 2016).

The Texas Supreme Court further recognizes that it is "beyond argument that one participant on a construction project cannot recover from another . . . for economic loss caused by negligence." *LAN/STV*, 435 S.W.3d at 246 (noting that "the risk of liability to everyone on the project would be magnified and indeterminate"). If allowing recovery in negligence "is not congenial to the parties, they are free to change it in the contracts that link them." *Id.* at 247 ("But the parties are just as free to provide for liability by contract that the law does not allow in tort."); *cf. Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 420 (Tex. 2011) (disclaiming any intent to address circumstances in construction cases involving "parties in a contractual chain who have had the opportunity to allocate risk, unlike the situation faced by Sharyland").

Federal courts routinely grant 12(b)(6) motions to dismiss tort claims due to the economic loss rule. *See, e.g., Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) (affirming grant of motion to dismiss based, in part, on economic loss rule); *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 930 (N.D. Tex. 2014) (granting motion to dismiss negligence and negligent misrepresentation claims due to, in part, the economic loss rule); *Teague v. Norcold, Inc.*, 774 F. Supp. 2d 817, 820 (N.D. Tex. 2011) (partially granting motion to dismiss based on economic loss rule); *Suissi v. Wells Fargo Bank N.A.*, No. 3:22-CV-01545-E, 2023 U.S. Dist. LEXIS 53613, at *12 (N.D. Tex. Mar. 29, 2023) (granting motion to dismiss on negligent misrepresentation claim that was essentially a "repackaged breach of contract

claim") (citation omitted); *R.P. Small Corp. v. Land Dep't, Inc.*, 505 F. Supp. 3d 681, 710 (S.D. Tex. 2020) (granting 12(b)(6) motion to dismiss with prejudice on negligence claim because "the duties at issue arose only because of the alleged contractual agreements and thus the claim for damages associated with the duties sounds only in contract").

A negligence claim can survive dismissal under the economic loss rule only if a plaintiff alleges: (1) the duty allegedly breached is independent of the contractual undertaking (*i.e.*, the duty is imposed by law and not created by contract); *and* (2) the harm suffered is not merely the economic loss of a contractual benefit or to the subject of the contract itself. *Bernal*, 2015 U.S. Dist. LEXIS 163810, at *3 (quotations and citations omitted) (analyzing whether a tort claim is merely a "repackaged breach of contract claim"). FLNG plausibly alleges neither an independent duty nor a harm outside of the Plant and EPC Contract. The economic loss rule bars FLNG's negligence claim as a matter of law.

## 1. FLNG fails to allege any independent duty CB&I owes outside of the EPC Contract.

FLNG fails to allege the existence of a duty CB&I owed to FLNG that is independent of CB&I's obligations under the EPC Contract. Indeed, there is no such duty: the relationship of the parties, which centers around the construction of an industrial facility, is necessarily and exclusively defined by their thoroughly negotiated and memorialized agreements. FLNG's negligence claim fails for this reason alone.

**a. FLNG's allegations of CB&I's duties emanate solely from the EPC Contract.**

The Petition makes clear that any obligation owed by CB&I emanates exclusively from the EPC Contract.  Nowhere does FLNG explain or describe the tort duty that they allege CB&I owes.  *See Miller*, 970 F. Supp. 2d at 584.  Conversely, what little they do say about CB&I's alleged misconduct relates to issues of commissioning, alarms, and hazard assessment that are framed by the EPC Contract and comprehensible only by reference to its terms.

The EPC Contract between FLNG and CB&I unambiguously governs the "responsibilities" owed by the respective parties.  (*See generally* Ex. A, Article 3 (Contractor's Responsibilities); Article 4 (Owner's Responsibilities)).  For example, FLNG alleges the responsibility of the JV was to "aid in the assessment of the piping including its pressure and pressure trending" and that failure to do so led to the Incident.  (*See* Pet. ¶ 28.)  Any such obligation is within the scope of the EPC Contract.  In fact, the parties agreed that "***All Work*** . . . relating to the Scope of Work under this Agreement shall be governed by the terms and conditions set forth in the Agreement . . . ."  (*See* Ex. A., ¶ 21.1) (emphases added).  Any work CB&I performed that FLNG now claims improper was governed by the EPC Contract.

The EPC Contract defines and prescribes the applicable standards of performance, allocations of risk, and how the parties should handle their respective obligations.  *See Houston Metro Ortho and Spine Surgery, LLC v. Juansrich, Ltd.*, No. 14-19-00732-CV, 2021 Tex. App. LEXIS 5350, at *16 (Tex. App.—Houston [14th Dist.] July 6, 2021, pet.

filed) (holding economic loss rule barred tort claims because the agreement "cover[ed] the field of th[e] dispute" in so far as it created ownership interests, defined the parties' rights and duties, and established the remedies available when a party failed to perform those duties).

Moreover, "mere nonfeasance under a contract creates liability only for breach of contract and tort damages are generally not recoverable unless the plaintiff suffers an injury that is independent and separate from the economic losses recoverable under a breach of contract claim." *Bernal*, 2015 U.S. Dist. LEXIS 163810, at *8 (finding negligence claim barred by the economic loss rule as it was merely a "repackaged breach of contract claim" and the tort claims would not exist but for the parties' contractual relationship).

Here, FLNG alleges "Defendants" failed to implement "temperature trending or alarms available outside of initial commissioning" (Pet. ¶ 28) and failed to "evaluate the impact of operating modes." (Pet. ¶ 30.)   These are not allegations that arise from a common law tort duty.   These allegations make sense only in the context of the EPC Contract—they would not exist absent the technically complex work that the parties agreed would occur and FLNG do not claim damages other than those arising from such work on the Plant.  *Exxon Mobil Corp. v. Kinder Morgan Operating L.P.*, 192 S.W.3d 120, 126 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("If there had been no contract, there would have been no extracted propane in appellees' possession.  Two things are clear: (1) the only loss Exxon Mobil complains of is the propane, which is the subject of

the contract[;]" and "(2) the contract spells out the parties' respective rights regarding the processing of the propane[.]").

The parties agreed to the terms of the EPC Contract and FLNG cannot avoid it by pleading in tort. "Clearly, the duties [FLNG] alleges [CB&I] violated were imposed by contract, not by law." *El Paso Mktg., L.P. v. Wolf Hollow I, L.P.*, 383 S.W.3d 138, 143 (Tex. 2012); *see R.P. Small Corp.*, 505 F. Supp. 3d at 710 (dismissing negligence claims that were premised on the defendants' contractual duties to "perform duties as a reasonably prudent operator, to follow COPAS, and to conduct drilling and testing"); *see also Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991) ("[I]f the defendant's conduct—such as failing to publish an advertisement—would give rise to liability *only* because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." (emphasis added)).

FLNG knows how the risk is allocated in this controversy. It assented to terms including the bar on consequential damages and lost profits, the cap on CB&I's liability, the limits on individual claims, and the standards to be met by CB&I in performing the work. FLNG knows equally well that the EPC Contract stops it from recovering the $1 billion it allegedly lost due to business interruption. So it acts like the EPC Contract does not exist and proceeds in negligence (despite not pleading the existence of an underlying duty in tort). Such sleight-of-hand should fail—FLNG "chose to limit [its] contractual rights" against CB&I and cannot vanish the EPC Contract merely because it is opportune. *See El Paso Mktg.*, 383 S.W.3d at 143-44. FLNG's negligence claim is barred by the economic loss rule and should be dismissed for this reason alone.

**b.  <u>No special relationship or professional exception applies to avoid the economic loss rule.</u>**

The intersection of tort and contract claims is a frequent source of confusion in the law.  The "contorts" questions that arise where the two types of claims cross have birthed a host of commentary and decisions.  In Texas, it is clear that an independent tort duty to perform in a workmanlike manner can arise despite the existence of a contract relating to the work.  But it is equally clear that any such general duty is superseded by a contract that sets forth standards of performance in a comprehensive and detailed way.  That is precisely the case here.  Business entities like FLNG and CB&I cannot build a billion-dollar facility over the course of several years in the absence of a contract.  Indeed, the EPC contracting around a project like the Plant is among the most complex and detailed in the world.  It is precisely for these reasons that economic loss claims are determined by reference to contract.  No tort duty is implied because none is necessary or helpful to the resolution of a controversy.

Here, FLNG cannot assert any facts alleging CB&I had any existing duty or "special relationship" arising outside of the EPC Contract.  Nor can they allege an injury independent from the subject matter of the EPC Contract.

The decisions implying a common law duty of workmanlike behavior or professional duty are superseded by the more precise and comprehensive standards memorialized in the EPC Contract.  *See Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*, 82 S.W.3d 691, 697 (Tex. App.—Eastland 2002, no pet.) (declining to impose an implied warranty of good and workmanlike performance to the repair work because,

under the economic loss rule, "[i]mplied warranties are grounded more in tort than in contract[,]" and "liability for allegedly deficient repairs resulting only in economic loss should be restricted to the risk allocations contained within the contracts[.]").

Texas law similarly disfavors the application of any "professional" exception in the design and construction industry. *See, e.g.*, *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 107 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (holding that the negligence of an engineering firm, if any, in the performance of its inspections caused no injury to the owner beyond the economic loss to the subject of the contract under the economic loss rule); *Schambacher v. R.E.I. Elec., Inc.*, No. 2-09-345-CV, 2010 Tex. App. LEXIS 6426, at *20-21 (Tex. App.—Fort Worth Aug. 5, 2010, no pet.) (mem. op.) (precluding claims that defendants had a common law duty to perform services under their respective contracts with care, skill, and reasonable expedience and that their negligent failure to do so gave rise to an action in tort); *ALS 88 Design Build LLC v. MOAB Constr. Co.*, No. 04-15-00096-CV, 2016 Tex. App. LEXIS 4942, at *7 (Tex. App.—San Antonio May 11, 2016, pet. denied) (mem. op.) (recognizing sometimes there is an exception for professional negligence, but the "gravamen of [plaintiff's] negligence cause of action is that [defendant] negligently performed its duties under the contract by failing to communicate and perform according to the contract terms and by rendering a flawed architectural design … [a]s alleged, [defendant's] duty of liability arose under the contract, not independent of the contract"); *LAN/STV*, 435 S.W.3d at 249-50 (holding economic loss rule precluded contractors from recovering economic losses from a design professional in tort when no breach of contract claim was asserted).

The same principles applied in these cases apply here: FLNG's claim sounds in contract and cannot be transformed into a negligence claim because professionals were involved in the work under the EPC Contract.

### 2. FLNG fails to allege an independent injury outside of the EPC Contract.

Even if FLNG has plausibly alleged an independent duty CB&I owes outside of the EPC Contract (which it has not), FLNG fails to adequately allege any injury (*economic or otherwise*) independent from the subject matter of the EPC Contract. *See Curtis v. Cerner Corp.*, 621 B.R. 141, 174 (S.D. Tex. 2020).

### a. The alleged damages are economic losses arising from the EPC Contract.

On its face, the Petition makes clear FLNG is seeking only economic losses from the subject matter of the EPC Contract. (Pet. ¶ 23 (explaining alleged damages to the Plant caused the Plant to be shut down for repair and replacement operations and the Plant suffered substantial business interruption and lost profits during this extended shutdown period).)

Texas law holds that business interruption damages, lost profits, replacement, and repairs are inherently contractual economic losses subsumed by the economic loss rule. *See, e.g.*, *R.P. Small Corp.*, 505 F. Supp. 3d at 710 (granting 12(b)(6) motion to dismiss with prejudice on negligence claim because the duties arose only because of contractual agreements); *Johnson*, 999 F. Supp. 2d at 930-31 (granting motion to dismiss on negligence claim due to, in part, the economic loss rule because, *inter alia*, plaintiff failed to allege an injury independent from the subject matter of the contract); *Curtis*, 621 B.R.

at 176 (holding the nature of plaintiff's loss sounded only in contract because the consequential damages sought involved indirect losses, such as lost good will and business profits, which were insufficient to establish an independent injury); *El Paso Mktg.*, 383 S.W.3d at 144 (barring negligence claim for alleged damages of business interruptions in gas delivery that required purchases of replacement power).

Again, FLNG seeks to avoid the express waiver of consequential damages in the EPC Contract (*see* Ex. A, ¶ 20.5) by grasping for an independent negligence claim.  It fails to do so – the economic losses it alleges to have suffered are precisely the kind governed by the economic loss rule. Indeed, "[t]he nature of the injury most often determines which duty or duties are breached."  *Jim Walters Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).  This case is well within the established boundaries of the economic loss doctrine that bars FLNG's negligence claim.

### b.  The property damage exception to the economic loss rule is inapplicable because any alleged property damage was to the subject matter of the EPC Contract.

The "property damage" exception to the economic loss rule is inapplicable when the damage occurs to the subject matter of the contract.  By FLNG's own concessions, the Incident damaged the Plant (Pet. ¶ 23), which was the subject of the EPC Contract.[6] Consequently, the economic loss rule subsumes FLNG's negligence claim.  *See, e.g.*, *MEMC Pasadena, Inc. v. Riddle Power, LLC*, 472 S.W.3d 379, 397 (Tex. App.— Houston [14th Dist.] 2015, no pet.) (holding economic loss rule barred negligence claim

---

[6] Plaintiffs even go so far as to graphically depict the exact scope and subject matter central to the EPC Contract and the alleged related damage. (Pet. ¶¶ 20, 22-23.)  They do not allege any damages outside the Plant.

when property damage was present because the loss was to the subject matter of the contract); *AXA Art Ams. Corp.*, 208 F. Supp. 3d at 827 (granting motion to dismiss with prejudice because the only property loss or damage was to the storage unit, which was to the subject matter of the contract); *El Paso Mktg.*, 383 S.W.3d at 144 (holding a contractual duty to deliver natural gas precludes a negligence claim under the economic loss rule even when contaminated gas damaged the plaintiff's equipment); *Reed*, 711 S.W.2d at 618 (negligent home construction sounds only in contract); *Medical City Dall., Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 61-62 (Tex. 2008) (where plaintiff building owner contracted with roofing company to re-roof its building, its negligence claim against roofing-materials supplier was barred by economic loss rule because the only injury was to defective roof itself, which was "the subject of a contract" between owner and roofing company); *Schambacher*, 2010 Tex. App. LEXIS 6426, at *20-21 (holding that homeowner's negligence claims against subcontractors were barred by economic loss rule, where homeowner had no contractual privity with subcontractors, and only injury alleged was to construction services that were subjects of contracts between subcontractors and general contractor); *Pugh v. General Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 93-94 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (holding that homeowners' negligence claims against subcontractor and materials supplier, with whom they had no contractual privity, were barred by economic loss rule where only injury was to home itself, which was subject of construction contract between homeowner and general contractor).

FLNG fails to allege the existence of any facts that would take its claims outside the economic loss rule. The property damage in this matter relates exclusively to the Plant that is the subject of the EPC Contract. Accordingly, the EPC Contract should govern any related claims.

### B. The Two-Year Statute of Limitations Bars FLNG's Negligence Claim.

FLNG's negligence claims are untimely as well as improper. In Texas, a negligence claim must be brought within two years of its accrual. Tex. Civ. Prac. & Rem. Code § 16.003(a); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999). The Texas statute of limitations applies to this action because the Federal Rules of Civil Procedure "do not provide for retroactive application to the procedural aspects of a case that occurred in state court prior to removal to federal court." *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014) (citations omitted) (applying Texas statute of limitations to action removed based on federal question jurisdiction); *see Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000) ("The federal rules do not apply to filings in state court, even if the case is later removed to federal court."); *Freight Terminals, Inc. v. Ryder Sys., Inc.*, 461 F.2d 1046, 1052 (5th Cir. 1972) (a "district court must look to state law to ascertain whether service was properly made prior to removal").

FLNG filed the lawsuit on June 8, 2024. The true accrual date is much earlier, when the alleged wrongdoing actually occurred. That date is in October 2019, when a joint team of Defendants and FLNG approved the alarm systems for the Plant. (*See* Ex. A to Pet. at 2 ("On August 2, 2018, after the LNG pipe was operating, a team of 8

representatives of the CCZJV plus one representative from FLNG revised alarm rationalization … [another] engineer signed off on the last rationalization report on October 4, 2019.").)

Under Texas law, negligence-based causes of action generally accrue, "and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy." *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 410 (5th Cir. 2004). This is true even if the fact of injury is not discovered until later and even if all resulting damages have not accrued when the alleged wrongful act is committed. *Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex. 1998).

Although FLNG has not pled the discovery rule, its pleading would not save the negligence claim from dismissal. The discovery rule only "defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Computer Associates Intern., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). When an event occurs that should put a plaintiff on notice to check for injury, the perspective period begins running "even if the claimant does not yet know . . . the specific cause of the injury, the party responsible for it, the full extent of it, or the chances of avoiding it." *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, 146 S.W.3d 79, 93–94 (Tex. 2004); *Crisman v. Odeco, Inc.*, 932 F.2d 413, 415 (5th Cir. 1991).

The Petition is void of any allegations that FLNG could not have discovered the alleged facts giving rise to its cause of action until a date within the applicable statute of limitations. To the contrary, the allegations confirm FLNG had actual knowledge (or, at

minimum, should have known) of the allegations giving rise to its claim by 2019.  (*See* Ex. A to Pet. at 2 ("PSVs were tested annually at FLNG.").)  FLNG's action is time-barred and should be dismissed.

### C. The Negligence Claim Must Be Dismissed Because FLNG Improperly Lumps the Defendants Together and Does Not Specify What Each Defendant Allegedly Did.

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a). A plaintiff's failure to allege what role each defendant played, separately for each defendant, violates Rule 8(a) and therefore justifies dismissal under Fed. R. Civ. P. 12(b)(6).  *Chyba v. EMC Mortg. Corp.*, 450 F. App'x 404, 406 (5th Cir. 2011) (affirming Rule 12(b)(6) dismissal, finding that Plaintiff's "vague allegations of malfeasance by a global group of unspecified 'defendants'—without alleging any particular acts by the [moving] Defendant—provided an additional reason to dismiss the suit").

FLNG does not allege particular facts as to each Defendant.  Rather, what little facts are included on the negligence claim improperly and vaguely lump CB&I's actions with the actions of the other Defendants, one of which is not a part of the JV or the EPC Contract.  For example, Plaintiffs allege Defendant PSRG was responsible for conducting studies of the systems (Pet. ¶ 31), yet Plaintiffs allege all "Defendants" were negligent in "failing to conduct studies of the FLNG systems[.]"  (Pet. ¶ 32.)

It is unclear from the face of the Petition the casual links and alleged wrongdoings FLNG attributes to each Defendant to establish its negligence claim.  "At a minimum,

[Plaintiffs] should endeavor to explain what role each [d]efendant played . . . rather than grouping them together at all times." *Del Castillo v. PMI Holdings N. Am., Inc.*, No. 4:14-CV-03435, 2016 U.S. Dist. LEXIS 91051, at *50 (S.D. Tex. July 13, 2016) (dismissing negligence claims arising from an explosion at a natural gas refinery where the complaint "lump[ed] together multiple defendants without identifying who is responsible for which acts").

Accordingly, the negligence claim warrants dismissal for Plaintiffs' failure to state both a factually and legally plausible claim.

## V.    CONCLUSION

For all of the reasons stated above, the Court should dismiss FLNG's negligence action in its entirety, along with any other relief that is just and appropriate.


Dated:  July 29, 2024                    Respectfully submitted,

                                         **THE KIM LAW FIRM**

                                         */s/ John H. Kim*
                                         John H. Kim
                                         State Bar No. 00784393
                                         Denise H. Kim
                                         State Bar No. 24010933
                                         4309 Yoakum Blvd., Suite 2000
                                         Houston, Texas 77006
                                         Telephone: (713) 522-1177
                                         Facsimile: (888) 809-6793
                                         jhk@thekimlawfirm.com
                                         denise@thekimlawfirm.com

---

CB&I LLC'S RULE 12(b)(6) MOTION TO DISMISS                                    Page 20

**BAKER & McKENZIE LLP**

Jack W. Massey
Federal ID No. 658576
State Bar No. 24051004
Matthew C. Rawlinson
Federal ID No. 24546
State Bar No. 24013379
800 Capitol St., Suite 2100
Houston, Texas 77002
Telephone: (713) 427-5000
Facsimile: (713) 427-5099
jack.massey@bakermckenzie.com
matt.rawlinson@bakermckenzie.com

Sydney B. Hunemuller
Federal ID No. 3838913
State Bar No. 24120911
1900 N. Pearl St., Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-3099
Facsimile: (214) 978-3099
sydney.hunemuller@bakermckenzie.com

*Counsel for CB&I LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 29thday of July, 2024, a true and correct copy of this *CB&I LLC's Rule 12(b)(6) Motion to Dismiss* was served electronically through the Court's ECF system on parties registered to receive electronic filings in the above-captioned case.

*/s/ Jack W. Massey*
Jack W. Massey